IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MOTIVA LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:08 CV 429 |
| | § | PATENT CASE |
| NINTENDO CO LTD, NINTENDO OF AMERICA, INC. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Nintendo of America, Inc. ("Nintendo America") and Nintendo Co. Ltd.'s ("Nintendo Co.") (collectively "Defendants") motion to transfer venue (Docket No. 17). After consideration of the parties' briefing, Defendants' motion is **DENIED**.

## BACKGROUND

On November 10, 2008, Motiva, LLC ("Motiva") filed this action alleging that Defendants infringe U.S. Patent No. 7,292,151 (the "'151 patent"). Motiva is organized under the laws of Ohio and has its principal place of business in Dublin, Ohio. Kevin Ferguson and Donald Gronachan, the named inventors of the '151 patent, respectively live in Dublin, Ohio and Holtsville, New York. Nintendo Co. is organized under the laws of Japan and has its principal place of business in Kyoto, Japan. Nintendo America is incorporated in Washington and has its principal place of business in Redmond, Washington. Nintendo America is a wholly owned subsidiary of Nintendo Co. and markets and sells Nintendo Co.'s products throughout North America.

## APPLICABLE LAW

Defendants move to transfer the case to the Western District of Washington under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As always, a district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

## APPLICATION

### *Jurisdiction*

Motiva disputes that this case "could have been brought" in the Western District of Washington by arguing that Defendants have failed to show personal jurisdiction over Nintendo Co. would be proper in that venue. Defendants provide evidence, by form of declaration, that the allegedly infringing products were designed and developed by Nintendo Co. and subsequently marketed and sold in Washington by Nintendo America at the direction of Nintendo Co. Rather than contest this jurisdictional evidence, Motiva merely argues that Nintendo Co. has not presented direct evidence that infringing products are available in Washington.

To the contrary, Defendants have presented uncontested direct evidence, by way of declaration, that allegedly infringing products designed by Nintendo Co. are sold in the state of Washington. This evidence demonstrates that the accused products were purposefully directed into the state of Washington by Nintendo Co. such that personal jurisdiction can be asserted in that state. *See Beverly Hills Fan Co. v. Royal Sovereign Corp. See* 21 F.3d 1558, 1566 (Fed.Cir.1994) ("'[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product

3

. . . , it is not unreasonable to subject it to suit.'") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *GSK Tech., Inc., v. Schneider Elec., S.A.*, 6:06-cv-361, 2007 WL 788343 at *2 (E.D. Tex. March 14, 2007) (Davis, J.) (finding that evidence of sale of defendant's products into a nation-wide distribution network along with evidence that the products were available in Texas amounted to a prima facie showing of purposeful entry into the Texas stream of commerce). Motiva seems to suggest that Defendants must produce actual receipts, bills of lading, or some other document showing that accused products were shipped or can be purchased in Washington. However, in the absence of any contrary evidence, a declaration as to these facts more than suffices for Defendants to meet their burden.[1] *See Double G Energy Inc. v. At Gas Gathering, Inc.*, No. Civ.A 3:05-CV-0749-P, 2005 WL 1837953, at * 4, n.3 (N.D. Tex. July 28, 2005) (finding declaration competent evidence to establish jurisdiction).

*The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Therefore, courts have analyzed this factor in light of the fiction that voluminous documents must be transported from their physical location (supposing that electronically stored documents are, in fact, physical) to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. Thus, almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical

---

[1] Motiva's argument is further weakened by the fact that they assert that this Court may assert personal jurisdiction over Nintendo Co. based on a "stream of commerce" theory. *See* Original Complaint, Docket No. 1 at ¶ 6. Given that Motiva agrees that neither Defendant has any employee or place of business in Texas, it is disingenuous for Motiva to now argue that Nintendo Co. does not purposefully direct its products to Washington where its U.S. subsidiary is located.

4

location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *Jackson v. Intel Corp.*, 2:08-cv-154, 2009 WL 749305 at *2 (E.D. Tex. March 19, 2009) (Ward, J.) (analyizing the volume and location of parties documentary evidence); *Robles v. USA Truck, Inc.*, L-08-122, 2009 WL 677835 at *5 (S.D. Tex. Mar 12, 2009) (same)**.**

Defendants aver that documents relevant to this litigation are located in Washington, California, New York, and Japan. While it will certainly be more convenient to transport documents from locations in California and Washington to the Western District of Washington, Defendants have not specified the location (out of the four that they provide) where the quantum of relevant documents to this litigation exist. Assuming that Defendants' relevant documents exist equally in all four locations, it would be slightly more convenient for Defendants to transport their relevant documents to the Western District of Washington than to Tyler, Texas.

In addition, Motiva's relevant documents are also considered in the analysis. Motiva contends that its relevant documents are located in Dublin, Ohio and Holtsville, New York. The distance between Holtsville and Tyler, Texas is roughly 1,566 miles while the distance between Holtsville and Seattle, Washington is roughly 3,025 miles. Similarly, the distance between Dublin and Tyler is roughly 1,011 miles while the distance between Dublin and Seattle is roughly 2,463 miles. In both cases, transporting Motiva's relevant documents to Washington as opposed to Texas will require twice the travel distance.

Defendants respond to these facts by arguing that they clearly have the greater volume of documents relevant to this suit because they have been in existence longer than Motiva and hold all the documents relevant to the accused products. However, at this early stage of the litigation it is unclear which issues will be the most relevant or which documents will be necessary for trial. This

is especially true because Defendants have pleaded defenses such as laches, waiver, estoppel, unclean hands, and invalidity, which rely almost exclusively on Motiva's past conduct. In the absence of any evidence that the greater quantity of documents relevant to this entire case are located closer to Washington than Texas, this factor remains neutral.

*The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is simply the concept that all relevant and material third-party witnesses reside within the subpoena power of a particular court. *See In re Volkswagen II*, 545 F.3d at 316; *Miller v. Longview Psychiatric Hosp., L.L.C.*, 2:08-CV-42, 2009 WL 748094 at *3 (E.D. Tex. March 19, 2009) (Ward, J.).

Considering relevant witnesses have been identified in Washington, New York, Japan, and Ohio, there is no jurisdiction with "absolute subpoena power." Furthermore, Defendants have not identified any non-party or unwilling witnesses and have not provided any briefing regarding this factor. Accordingly, this factor is neutral.

*The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. Further, regardless of the actual likelihood of a particular witness testifying at trial, the relative materiality of witnesses' testimony is irrelevant to this inquiry. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4 (Fed. Cir. May 22, 2009) ("Requiring a defendant to show that a potential witness has

more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, all potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case.

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer.

As Tyler and the Western District of Washington are clearly more than 100 miles apart, the 100 mile rule applies. Defendants have identified that all of their relevant witnesses live in Washington or Japan. Specifically, Defendants identify four witnesses all living in Washington and

7

three living in Japan. Motiva identifies only the inventors, residing in Ohio and New York, as probable witnesses. Based only on the identified witnesses, Washington would be a far more convenient trial venue for Defendants' witnesses, but only slightly less convenient for Motiva's witnesses, than Texas.

With regard to party witnesses residing in Japan, Defendants allege that the travel time from Japan to Tyler is 21 hours while travel from Kyoto to Seattle is approximately 14 hours. However, the Federal Circuit has recently instructed that the "100 mile rule" should not be rigidly applied. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id.* at *4, *6 (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California). Therefore, since Japanese witnesses will be faced with significant travel time to the U.S., no matter the venue, their convenience is significantly discounted in this factor's analysis.

Regardless of the foregoing analysis, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at *5. As neither party has particularly identified a "substantial number" of witnesses residing in either in Washington or Texas, this factor does not automatically favor transfer. Thus, because Defendants have identified more witnesses for whom trial in Washington would be clearly more convenient than Texas, this factor slightly favors transfer.

8

*Other Practical Problems*

Defendants argue that it would not be impractical to transfer this case to Washington, but do not identify any other practical problems with this case continuing in the Eastern District of Texas. Additionally, Defendants note that the Western District of Washington has recently adopted patent rules similar to those existing in this district. Defendants have not presented any evidence of other considerations that would make trial in Washington more convenient than trial in Texas. Thus, this factor is neutral.

*The Administrative Difficulties Flowing from Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *8. Defendants have submitted evidence that the median time to trial in both the Eastern District of Texas and Western District of Washington is 18 months. Directly contrary to this evidence is Defendants' argument that this district is more congested because more patent cases are filed in the Eastern District of Texas than in the Western District of Washington. Defendants argument is logically flawed and unsupported by their own evidence. Defendants have presented nothing showing that court congestion makes trial in this district more burdensome than trial in the Western District of Washington. In fact, the Western District of Washington has had only two patent cases go to trial in the past seven years. *See* Pope Decl., Docket No. 24-13 at ¶¶ 5-6. Thus, despite the Eastern District of Texas's high volume of patent cases, median time to trial remains comparable to that of the Western District of Washington. Accordingly, this factor is also neutral.

*The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed

9

upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321.

Motiva does not contest that the Eastern District of Texas does not have a relevant localized interest in this dispute. As Nintendo America is incorporated in Washington and has its principal place of business in the Western District of Washington, that forum's localized interest in this dispute is undisputedly high. Thus, this factor favors transfer.

### *The Familiarity of the Forum with the Law that Will Govern the Case*

The parties do not assert that either the Western District of Washington or the Eastern District of Texas has any particular advantage with regard to familiarity with the law governing this litigation. As a result, this factor is neutral.

### *Avoidance of Unnecessary Problems of Conflict of Laws*

Likewise, the parties have not identified any issues regarding conflicts of laws in this litigation. Thus, this factor is neutral.

### CONCLUSION

In sum, the cost for attendance of willing witnesses factor slightly favors transfer, and the "local interest" factor strongly favors transfer. All other factors are neutral. Though the Court acknowledges that this is a close case, it is readily distinguishable from cases such as *In re*

*Genentech* and *TS Tech*. In those cases, it was undisputed that the vast majority of identified documents and witnesses were located in and around the transferee court. Here, while Defendants rely heavily on the fact that there are no documents and witnesses located in Texas, they ultimately fail to meet their burden—proof that this case is clearly more conveniently tried in the Western District of Washington. Instead, the evidence shows that there are witnesses and documents located in Japan, the west and east coast, and the midwest.

In light of the evidence that the relevant witnesses and documents are spread across the country, the simple fact that one of the Defendants operates primarily in the transferee venue cannot, standing alone, show clear convenience. If that were so, most cases could only be tried where the parties had their principal places of business. That result is clearly in conflict with a plaintiff's right to file a case in a district where jurisdiction and venue are proper. Given the evidence before the Court, Defendants' showing of convenience is tepid and murky rather than clear. Thus, Defendants have failed to meet their burden of showing that the Western District of Washington is the "clearly more convenient" venue. Accordingly, their motion is **DENIED**.

**So ORDERED and SIGNED this 30th day of June, 2009.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**